DAVID X. MEYERS, and ESTATE OF JEAN E. MEYERS, Deceased, DAVID X. MEYERS, ADMINISTRATOR, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Meyers v. Commissioner
Docket No. 10412-75.
United States Tax Court
T.C. Memo 1980-336; 1980 Tax Ct. Memo LEXIS 245; 40 T.C.M. (CCH) 1063; T.C.M. (RIA) 80336; August 26, 1980, Filed *245 David X. Meyers, pro se. Val J. Albright, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined a $79,656 deficiency in petitioners' 1971 income tax. Due to concessions of the parties the only issue for determination is the amount of net long-term capital gain petitioners realized in 1971. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. At the time of filing his petition in this case, David X. Meyers ("petitioner"), individually and as administrator of the Estate of Jean E. Meyers, was a resident of Chicago, Illinois. Petitioner is 79 years old and is the surviving spouse of Jean E. Meyers. The LaSalle Randolph Garage Corporation (the "Corporation") was an Illinois corporation engaged in the business of operating parking garages. Petitioner and members of his family have operated the Corporation since 1936. During the years 1967 through 1971 petitioner and Edward P. Meyers (petitioner's brother) each owned 50 percent of the Corporation's stock. On December 7, 1967, petitioner, Edward P. Meyers and Theodore J. Isaacs formed Lake-LaSalle Company (the "Partnership"), *246 an Illinois limited partnership. At all times relevant to this case the ownership interests in the Partnership were distributed as follows: Partner
Percentage Interest
Petitioner
45%
Edward P. Meyers
45%
Theodore J. Isaacs
10%
In 1967 the Corporation entered into a lease (the "Ground Lease"), under which the Corporation leased real estate from S.V.D. Catholic Universities, Inc., commonly known as 181 North LaSalle Street, Chicago, Illinois. The Ground Lease commenced on November 30, 1967, and expires on November 30, 1987. The Corporation apparently transferred the Ground Lease to the Partnership sometime before April 12, 1971. Prior to entering into the Ground Lease the Corporation was the lessee under two leases covering property known as the Sherman Garage and a lot adjacent to the Sherman Garage. These leases were surrendered by the Corporation to permit the formation of the Ground Lease. In 1968 the Partnership constructed a multi-story parking garage on the property covered by the Ground Lease. The cost of this facility was $1,459,819, allocable $1,297,815 to the building structure and $162,004 to the elevators. These cost figures are reflected *247 in the Partnership's 1968 Partnership Return of Income (Form 1065). On December 2, 1970, the Partnership entered into a Contract for Sale of Real Estate pursuant to which the Partnership agreed to sell the Ground Lease and parking garage. On April 12, 1971, this sale was consummated. The gross sales price of the Ground Lease and parking garage was $1,936,099. On its U.S. Partnership Return of Income (Form 1065) for the period January 1 through April 12, 1971, the Partnership reported a $619,169 gain on this sale calculated as follows: Amount Realized
$ 1,936,099
Adjusted Basis
1,316,930
Gain
$ 619,169
The adjusted basis was determined as follows: Cost of Ground Lease
$
Cost of Parking Garage
Structure $1,297,815
Elevators 162,004
1,459,819
Initial Basis
$ 1,459,819
Plus: Security Deposit $ 50,000
Brokerage
Commission 30,500
Legal Fee
350
$ 80,850
$1,540,669
Less: Depreciation
(223,739)
Adjusted Basis
$ 1,316,930
A subsequent audit of the Partnership resulted in a $50,000 decrease in the adjusted basis attributable to the security deposit which had been refunded. The Partnership's recalculated gain was $669,169 *248 ($619,169 plus $50,000). Maurice M. Egert, a certified public accountant who had prepared the Partnership return, prepared petitioner's joint 1971 U.S. Individual Income Tax Return (Form 1040). This return reported petitioner's share of the Partnership's gain as follows: Total Partnership Gain
$ 619,169
Less: Depreciation
Recapture
84,800
Partnership Capital Gain
$ 534,369
X
Petitioner's Share of Partnership
Capital Gain
.45
Petitioner's Capital Gain
$ 240,466
Petitioner did not file the return as prepared by Egert. The return he did file did not report any income from the Partnership for 1971, but did contain the following statement: The income of the Partnership and Capital Gains known as the Lake-LaSalle Company have not been accurately determined at this time. When these figures become known, an amended return will be filed. At the time of the trial no amended return had been filed. In his statutory notice respondent determined a deficiency of $79,656. The deficiency is attributable in part to petitioner's failure to report any net long-term capital gain from the Partnership. Respondent asserts that the amount of this gain is $262,966 *249 ($240,466 plus [(.45) times ($50,000)]). OPINION Due to concessions, the sole issue for determination is the amount of net long-term capital gain attributable to the Partnership's sale of the Ground Lease and parking garage that petitioner must recognize in 1971. Respondent contends that petitioner must recognize his distributive share of the Partnership's net long-term capital gain as reported by the Partnership on its 1971 Partnership Return of Income (Form 1065) and as later adjusted on audit. Petitioner, however, claims he is entitled to an increase in the Partnership's basis in the Ground Lease and parking garage in an amount equal to either (1) the value of the Ground Lease when transferred from the Corporation to the Partnership or (2) the value of the lease or leases surrendered by the Corporation in order to permit the formation of the Ground Lease. Respondent notes that the transfer of the Ground Lease from the Corporation to the Partnership appears to have been without consideration. Such a transfer, according to respondent, can be explained as either a constructive or actual dividend from the Corporation to petitioner followed by a contribution of the Ground *250 Lease to the Partnership by petitioner. Under such circumstances respondent admits that the Partnership would be entitled to a basis in the Ground Lease if the value of the Ground Lease were proved. In the present situation, however, respondent argues that petitioner cannot maintain that position for two reasons. First, petitioner has made no showing that he reported dividend income. Second, petitioner has not established the value of the Ground Lease on the date of transfer. Based on the record as a whole, we conclude that petitioner has failed to establish the value of the Ground Lease when it was contributed to the Partnership. It appears from petitioner's testimony that the property covered by the Ground Lease consisted of several parcels of land at least some of which the Corporation leased and utilized in its automobile parking business prior to the formation of the Ground Lease. Sometime before April 12, 1971, the Partnership effectively acquired the Ground Lease. The Corporation, for all that appears in the record, received no consideration in exchange for its rights under the Ground Lease. Petitioner is entitled to an increase in the Partnership's basis for the Ground *251 Lease and parking garage equal to the value of the Ground Lease at the time it was contributed to the Partnership. Petitioner has not introduced any evidence bearing on the value of the Ground Lease at the time it was contributed to the Partnership. Petitioner claims the Corporation surrendered several leases thereby permitting the formation of the Ground Lease. Since these leases were essentially exchanged for the Ground Lease, it is arguable that their cumulative value should be equivalent to the value of the Ground Lease. In his brief petitioner states that the Corporation surrendered leases on the following four parcels to obtain the Ground Lease: (1) the parking lot adjoining the Sherman Garage; (2) the LaSalle Wacker Garage; (3) the 120 Lake Street Garage; and (4) the Sherman Garage. [1] Petitioner also estimated the values of the above leases at the time they were surrendered. Unfortunately for petitioner, respondent is unable to cross-examine petitioner's opinion as it is contained solely in his brief, and accordingly we are unable to consider any new opinions contained in petitioner's brief regarding the values of the leases. *252 At trial petitioner testified that the lease on the Sherman Garage ran until February 28, 1991. Petitioner also estimated that a low figure for the Corporation's net income from the Sherman Garage was $25,000 per year. We do not believe that petitioner's jumbled and very generalized estimate of net income from the Sherman Lease is sufficient evidence under the circumstances to attempt to construct a value for such lease. There is no evidence on the values of the other leases surrendered by the Corporation in exchange for the Ground Lease. The burden of establishing the basis for the Ground Lease is on petitioner. Rule 142(a), Tax Court Rules of Practice and Procedure. Since petitioner has failed to present any evidence from which the value of the surrendered leases can be determined, we are unable to find that the Partnership is entitled to any basis adjustments in the Ground Lease. Decision will be entered for the respondent. Footnotes
1. Although petitioner asserts in his brief that leases on four parcels of property were surrendered for the Ground Lease, we find from the record that leases on the Sherman Garage and on the lot adjoining the Sherman Garage were surrendered. The record does not support any additional findings to the effect that additional leases on the LaSalle Wacker Garage and the 120 Lake Street Garage were also surrendered.↩